IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SOVEREIGN BANK,

    Plaintiff,

v.

GRANT THORNTON LLP,

    Defendant.

Civil Action No. 04-10237 (PBS)

### CERTIFIED COPIES OF STATE COURT PROCEEDINGS FILED PURSUANT TO LOCAL RULE 81.1

Pursuant to Local Rule 81.1, Defendant Grant Thornton LLP hereby provides, as Exhibit A, certified copies of all records and proceedings in the civil action captioned Sovereign Bank v. Grant Thornton LLP, Civil Action Number 03-5141 G (the "Action") from the Suffolk Superior Court Department of the Trial Court for the Commonwealth of Massachusetts and a certified copy of all docket entries in the Action.

Respectfully submitted,

GRANT THORNTON LLP
By its attorneys,

_/s/ Sarah B. Herlihy_
Patrick J. Sharkey (BBO # 454820)
Kevin M. McGinty (BBO #556780)
Sarah B. Herlihy (BBO # 640531)
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: February 4, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail/hand on 2-4-04

LIT 1441641v1

MAS-20030912  Case 1:04-cv-10237-PBS   Document 4   Filed 02/05/2004   Page 2 of 16   02/04/2004
dimarino                          Commonwealth of Massachusetts                          09:20 AM
                                  SUFFOLK SUPERIOR COURT
                                       Case Summary
                                       Civil Docket

# SUCV2003-05141
## Sovereign Bank v Grant Thornton,LLP

| | | | | | |
|---|---|---|---|---|---|
| File Date | 10/29/2003 | Status | Needs review for service (acneserv) | | |
| Status Date | 10/29/2003 | Session | G - Civil G | | |
| Origin | 1 | Case Type | B07 - Malpractice-Other | | |
| Lead Case | | Track | A | | |

| | | | | | |
|---|---|---|---|---|---|
| Service | 01/27/2004 | Answer | 03/27/2004 | Rule12/19/20 | 03/27/2004 |
| Rule 15 | 01/21/2005 | Discovery | 12/17/2005 | Rule 56 | 02/15/2006 |
| Final PTC | 06/15/2006 | Disposition | 10/28/2006 | Jury Trial | Yes |

## PARTIES

**Plaintiff**
Sovereign Bank
Active 10/29/2003

**Private Counsel 487820**
Robert Eugene Sullivan
Sullivan Weinstein & McQuay
2 Park Plaza
Suite 610
Boston, MA 02116-3902
Phone: 617-348-4300
Fax: 617-348-4343
Active 10/29/2003 Notify

**Defendant**
Grant Thornton,LLP
Service pending 10/29/2003

## ENTRIES

| Date | Paper | Text |
|---|---|---|
| 10/29/2003 | 1.0 | Complaint filed with request for trial by jury |
| 10/29/2003 | | Origin 1, Type B07, Track A. |
| 10/29/2003 | 2.0 | Civil action cover sheet filed |

## EVENTS

HEREBY ATTEST AND CERTIFY ON

_____ 4, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 03-5141 G | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| SOVEREIGN BANK | GRANT THORNTON, LLP |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Sandra Sue McQuay; A. Lauren Carpenter<br>SULLIVAN WEINSTEIN & MCQUAY, PC<br>Board of Bar Overseers number: Two Park Plaza, Boston MA<br>BBO# 487820; 551258 | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [xx] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B07 | accounting malprac. | (A) | (XX) Yes  ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................. $
2. Total Doctor expenses .................................................. $
3. Total chiropractic expenses ............................................ $
4. Total physical therapy expenses ........................................ $
5. Total other expenses (describe) ........................................ $
   Subtotal $

B. Documented lost wages and compensation to date ........................... $
C. Documented property damages to date ...................................... $
D. Reasonably anticipated future medical and hospital expenses .............. $
E. Reasonably anticipated lost wages ........................................ $
F. Other documented items of damages (describe)   LOSSES ON LOAN   $ AT LEAST 5,000,000
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Plaintiff loaned money to a third party in reliance on financial statements negligently prepared by the defendant accounting firm. As a result, plaintiff suffered losses on the loan, which was not repaid.

TOTAL $...............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $...............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Sandra Sue McQuay_   DATE: 10/29/03

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
2-3-04, THAT THE
FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY, _____
Ass't Clerk

*1*

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss. | SUPERIOR COURT |

| | | |
|---|---|---|
| SOVEREIGN BANK, | ) | 03-5141 G |
| | ) | |
| Plaintiff, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| GRANT THORNTON, LLP, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

Sovereign Bank sues to recover losses it incurred on loans that it made to CSPX, Inc., in reliance on audits of the company's financial statements performed by the defendant accounting firm, Grant Thornton, LLP. Due to material and negligent misstatements in the audits, which, among other things, significantly understated the value of CSPX's assets and the losses from its operations, Sovereign Bank was unaware of the true financial condition of CSPX, Inc. Sovereign Bank would not have made the loans if the financial statements had accurately reflected the financial circumstances of CSPX, Inc. CSPX, Inc., has defaulted on its obligations to Sovereign Bank, and Sovereign Bank has incurred substantial losses on the loans.

## Parties

1. Plaintiff Sovereign Bank ("Sovereign") is a federal savings bank with its principal place of business in Wyomissing, Pennsylvania, and a place of business in Boston, Massachusetts.

2. Defendant Grant Thornton, LLP ("Grant Thornton"), is a limited liability partnership created under the laws of the state of Illinois, with its principal place of business in Chicago, Illinois, and offices in Boston, Massachusetts.

3. The court has personal jurisdiction over the defendant pursuant to M.G.L. c. 223A, §3.

4. Venue is proper in this district under M.G.L. c. 223, §1.

## The Fleet Revolving Loan

5. CSPX, Inc. ("CSPX"), is a company that was engaged in the business of providing a variety of products to the shoe manufacturing industry.

6. Prior to October 2000, the operating capital for CSPX's business was provided primarily by a revolving loan from Fleet Bank in the amount of approximately $8.5 million. The Fleet loan was to expire by its terms in August 2001. CSPX also had a term loan in the amount of at least $2 million.

7. The Fleet loan was collateralized by substantially all of CSPX's business assets, including inventory. The terms of Fleet's revolving loan to CSPX required, among other things, that CSPX provide Fleet with audited financial statements on a periodic basis.

8. In 1999, CSPX retained Grant Thornton, a firm of public accountants, to perform an audit of CSPX's financial statements as of and for the period ended December 31, 1999.

9. Sovereign is informed and believes, and on that basis alleges, that Grant Thornton had copies of documents evidencing Fleet's loan to CSPX. Grant Thornton was aware of Fleet's requirement for audited financial statements at the time that Grant Thornton issued the audited financial statements for CSPX for the period ended December 31, 1999.

### The Citizen's Bank Proposal

10. In or about March 2000, Citizen's Bank proposed to make a loan to CSPX to pay off CSPX's obligations to Fleet under the Fleet revolving loan and to provide CSPX with operating capital by means of a new revolving loan in the amount of $9.5 million, a term loan in the amount of $3 million, and an acquisition line of $500,000, for a total amount of $13 million.

11. One of the conditions of Citizen's Bank's proposal to CSPX was the receipt of audited financial statements for CSPX for its fiscal year ended 1999.

12. Sovereign is informed and believed, and on that basis alleges, that CSPX informed Grant Thornton in or about March 2000 of Citizen's Bank's proposal and of the need for Grant Thornton to prepare audited 1999 financials in connection with that proposal.

13. CSPX ultimately did not obtain the financing from Citizen's Bank.

3

### Grant Thornton's Issuance of Audited Financial Statements in June 2000

14. Grant Thornton issued audited financial statements for CSPX on or about June 2, 2000, as of and for the period ended December 31, 1999.

15. The notes to Grant Thornton's audited financial statements for CSPX for the period ended December 31, 1999, referenced CSPX's then-existing revolving line of credit of $8.5 million and the fact that that line of credit would expire in August of 2001.

16. Grant Thornton's audited 1999 financial statements also reference the terms of that revolving loan, including the fact that the loan was secured by substantially all of CSPX's assets and that it permitted CSPX to borrow on 85% of its eligible U.S. trade receivables, on 70% of its foreign trade receivables, and on 60% of approved inventory.

17. Grant Thornton's audited 1999 financial statements for CSPX also expressly reference the revolving loan's requirement that CSPX provide "periodic reporting to the lender."

18. Grant Thornton's audited 1999 financial statements for CSPX refer as well to CSPX's obligation of $1,967,995 under a term loan secured by substantially all of CSPX's assets.

19. Grant Thornton had direct communications with Fleet loan officer Mark Moreau concerning CSPX.

### Sovereign Makes Loans to CSPX in Reliance on Grant Thornton's Audited 1999 Financial Statements.

20. Starting in or about July 2000, Sovereign engaged in negotiations with CSPX to replace CSPX's revolving loan from Fleet and to provide CSPX with a new

4

revolving line of credit to finance its business operations. Sovereign also engaged in negotiations with CSPX to make a term loan in the amount of $2 million.

21. The terms of Sovereign's revolving loan were to be similar to those of the Fleet loan, and, particularly, they were to be collateralized by substantially all of CSPX's business assets, including inventory.

22. The amount of the revolving loan under consideration by Sovereign was approximately $12 million, and the loan was to expire in April 2004.

23. In connection with its negotiations with Sovereign for the new revolving loan and the term loan, CSPX provided Sovereign with the 1999 audited financial statements which Grant Thornton had issued in June 2000.

24. Grant Thornton's audited financial statements for CSPX for 1999 stated that Grant Thornton had performed the audit "in accordance with auditing standards generally accepted in the United States," and that such standards "require that we plan and perform the audit to obtain reasonable assurances about whether the financial statements are free of material misstatements."

25. Grant Thornton's 1999 audited financial statements further provided that "[a]n audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements," and also "assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation." Grant Thornton represented in the audited statements that "[w]e believe that our audit provides a reasonable basis for our report."

26. Grant Thornton's 1999 audited financial statements further stated that the accountants who had audited CSPX's financial statements for the year ending December

31, 1998, "were not present to observe the physical inventory taken at December 31, 1998, and were unable to satisfy themselves by means of other procedures concerning inventory quantities."

27.  Notwithstanding Grant Thornton's recognition of the uncertainties with respect to CSPX's inventory as of December 31, 1998, Grant Thornton's audited 1999 financial statements contained an unqualified opinion on CSPX's balance sheet, stating:

> "In our opinion, the consolidated balance sheet referred to above presents fairly, in all material respects, the consolidated financial position of CSPX, Inc. and Subsidiaries as of December 31, 1999, in conformity with accounting principles generally accepted in the United States."

28.  Among other things, Grant Thornton's audited 1999 financial statements represented that CSPX had total assets of over $21 million, including inventory of $5,422,197, accounts receivable of $5,283,990, and property, plant, and equipment of $5,531,864.

29.  Grant Thornton's audited financial statements for CSPX also stated the unqualified opinion that CSPX had had a net loss of $56,128 for the year ended 1999.

30.  Sovereign reviewed and relied on Grant Thornton's audited financial statements for CSPX for 1999 in agreeing to make the revolving loan and the term loan to CSPX, and it would not have made the loans without them.

31.  Among other things, Sovereign reviewed the 1999 audited financial statements issued by Grant Thornton in assessing the risk of making the loans to CSPX. It expressly relied on Grant Thornton's unqualified opinions in those statements as to various indicators of CSPX's operating performance and financial health and prospects.

6

32. Sovereign concluded from Grant Thornton's audited financial statements that CSPX's finances were sound and that CSPX would be able to meet its obligations to repay the loans.

33. Sovereign's loans to CSPX closed on October 30, 2000, and, on the same day, Sovereign advanced $11 million in funds to CSPX under the revolving loan and $2 million under the term loan.

### Sovereign Relies on Grant Thornton's Draft Audited Financial Statements for 2000 in Continuing to Extend Credit to CSPX.

34. Sovereign is informed and believes, and on that basis alleges, that Grant Thornton was provided with documents relating to Sovereign's loans to CSPX. Grant Thornton was aware of the requirement of periodic financial reporting to Sovereign in connection with the loans.

35. Grant Thornton prepared draft audited financial statements for CSPX for the fiscal year ended December 31, 2000.

36. Sovereign was provided with Grant Thornton's draft audited financial statements for 2000 in or about late December 2001 or early January 2002.

37. Grant Thornton's draft audited financial statements for 2000 expressly referenced the line of credit that CSPX had obtained on October 30, 2000, which was stated to be in the amount of $11.5 million and to expire in April 2004. Those draft audited financial statements also referenced the terms of that revolving loan, including the fact that the loan was secured by substantially all of CSPX's assets and that it permitted CSPX to borrow on 85% of its eligible U.S. trade receivables, on 75% of its foreign trade receivables, and on finished goods and raw material.

7

38.     Grant Thornton's draft audited financial statements for 2000 also referred to CSPX's obligation of $2,380,000 on a note collateralized by substantially all of CSPX's business assets.

39.     Grant Thornton's draft audited financial statements for 2000 refer to certain restrictive covenants in the credit agreement, including the requirement of periodic reporting to the lender and the maintenance of various financial ratios.

40.     Although Grant Thornton's audited financial statements for 2000 were stamped as "draft," nothing in those statements purported to be incomplete or inaccurate, nor did the document suggest that the statements might contain any material misstatements caused by inherently defective audit procedures.

41.     Grant Thornton's draft 2000 audited financial statements represented, among other things, that CSPX had inventory as of December 31, 2000, in the value of $5,224,976 and accounts receivable of $4,617,837.

42.     Sovereign relied on Grant Thornton's draft 2000 financial statements in continuing to extend credit to CSPX on and after December 2001.

### CSPX's Default on the Loans

43.     By late 2001 it had become apparent to Sovereign that CSPX was experiencing some financial difficulties.

44.     Sovereign worked with CSPX to try to maximize its ability to collect on the loans. CSPX hired a consultant for its operations and also explored the possibility of obtaining a buyer for its business.

45.     CSPX, however, was ultimately unable to meet its obligations under the loans.

46.   On or about September 17, 2002, Sovereign and other creditors of CSPX filed a petition in the United States Bankruptcy Court for the District of Massachusetts putting CSPX into involuntary bankruptcy by reason of its insolvency. CSPX assented to the involuntary bankruptcy on or about September 18, 2002.

## The Material Financial Misstatements in Grant Thornton's Audited Financial Statements for CSPX

47.   After filing the petition for involuntary bankruptcy, Argus Management Corporation ("Argus") was retained to review the 1999 and 2000 audited financial statements prepared by Grant Thornton.

48.   As a result of Argus's review, Sovereign is informed and believes, and on that basis alleges, that the 1999 and 2000 audited financial statements prepared by Grant Thornton contain material misstatements of CSPX's assets and therefore materially misstate CSPX's financial position.

49.   For example, Sovereign is informed and believes, and on that basis alleges, that the 1999 audited financial statements prepared by Grant Thornton overstate the value of inventory in existence as of December 31, 1999; that the imputed historical cost basis of the assets disposed of in 1999, when considered in connection with the depreciation expense and fixed asset additions, results in an unreconciled difference in the financial statements of at least $1 million; and that the statements fail to recognize discrepancies in the application off CSPX's amortization policies for the molds used by CSPX in production.

50.   Additionally, Sovereign is informed and believes, and on that basis alleges, that the draft 2000 audited financial statements prepared by Grant Thornton overstated inventory by at least 12%, overstated revenue and accounts receivable by at

9

least 13%, and, as a result, understated CSPX's loss from operations by approximately 39%.

51.  Sovereign is informed and believes, and on that basis alleges, that the material misstatements in the 1999 and 2000 audited financial statements prepared by Grant Thornton reflect the failure to perform procedures and obtain results that are consistent with an audit in accordance with generally accepted auditing standards.

52.  As a result of these misstatements, Sovereign believed that CSPX's assets were materially greater than they actually were, and that CSPX was in better financial condition that it actually was.

53.  Had Sovereign been informed that CSPX's assets were materially less, and its losses materially more, than Grant Thornton had represented, it would not have made the loans to CSPX and it would not have continued to extend credit to CSPX.

## COUNT I

### NEGLIGENT MISREPRESENTATION

54.  Sovereign realleges and incorporates by reference the allegations contained in paragraphs 1 through 53 above.

55.  Grant Thornton owed Sovereign a duty to exercise reasonable care in preparing the audited 1999 financial statement for CSPX. Grant Thornton knew that CSPX had a revolving line of credit with Fleet Bank that required the review of audited financial statements, as well as a term loan; it knew that CSPX was considering replacing the Fleet loans and obtaining a revolving line of credit and a term loan from another lender; and it knew that any other lenders who might provide CSPX with such financing, such as Sovereign, would rely on the audited 1999 statement in making the loans.

10

56. Grant Thornton owed Sovereign a duty to exercise reasonable care in preparing the draft 2000 audited financial statement for CSPX because it knew that Sovereign's revolving loan to CSPX required periodic financial reporting and the maintenance of various financial ratios, and Grant Thornton also knew that Sovereign would rely on Grant Thornton's 2000 draft financial statements in continuing to extend credit to CSPX under the revolving line of credit.

57. Grant Thornton knew or in the exercise of reasonable diligence should have known that the statements in its 1999 audited financial statements and in its draft 2000 financial statements were false at the time they were made by reason of Grant Thornton's failure to prepare those statements in accordance with generally accepted accounting procedures.

58. Sovereign is informed and believes, and on that basis alleges, that Grant Thornton failed to follow generally accepted accounting procedures in connection with the audited statements by reason, among other things, of its failure to investigate or address numerous unusual developments in CSPX's finances, including large increases in inventory and gross margin during a time of decreasing sales, and its failure to regard inventory as an area with higher than normal audit risk, which resulted in material misstatements in the financial statements.

59. Sovereign relied on the 1999 audited financials and the draft 2000 financial statements prepared by Grant Thornton in making the revolving loan and term loan to CSPX, in advancing funds to CSPX under those loans, and in continuing to extend credit to CSPX.

60. As a direct and proximate result of Sovereign's reliance on the negligent representations of Grant Thornton, Sovereign has sustained loss including but not limited to the amounts that remain owing and unpaid from CSPX under the loans.

## COUNT II

### M.G.L. c. 93A

61. Sovereign realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 above.

62. Grant Thornton is a person engaged in trade or commerce as defined in M.G.L. c. 93A, § 1.

63. The acts described herein took place primarily and substantially in the Commonwealth of Massachusetts.

64. Grant Thornton's conduct in misrepresenting CSPX's financial condition in the 1999 and draft 2000 audited financial statements amounts to unfair and/or deceptive acts or practices and unfair methods of competition in violation of M.G.L. c. 93A, §§ 2 & 11.

65. As a result of Grant Thornton's actions, Sovereign has suffered damages, including without limitation its inability to collect the amounts owing to it from CSPX under the loans.

WHEREFORE, Sovereign requests that the Court:

(A) Enter judgment for Sovereign against Grant Thornton;

(B) Award Sovereign all damages suffered;

(C) Award Sovereign its costs and reasonable attorney's fees; and

(D) Grant Sovereign such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38 Sovereign demands a trial by jury on all claims as to which it has a right to a trial by jury.

SOVEREIGN BANK

By its attorneys,

*[signature]*

Sandra Sue McQuay, BBO # 487820
A. Lauren Carpenter, BBO #551258
SULLIVAN WEINSTEIN & MCQUAY, P.C.
Two Park Plaza, Suite 610
Boston, MA 02116
(617) 348-4300

Date: October 29, 2003

I HEREBY ATTEST AND CERTIFY ON
2-3-04 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY *[signature]*

13